## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NA'QUAN THOMAS, | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 25-CV-1375** |
| | : | |
| THE WELLINGTON | : | |
| AT HERSHEY MILLS, *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**COSTELLO, J.**                                                                 **MAY 5, 2025**

Currently before the Court are a Second Amended Complaint (ECF No. 11), a Motion to Appoint Counsel (ECF No. 3), and three Motions to Proceed *In Forma Pauperis* (ECF Nos. 9, 10, 12) filed by Plaintiff Na'Quan Thomas. For the following reasons, the Court will grant Thomas leave to proceed *in forma pauperis*. The Court will also permit Thomas the option of filing a third amended complaint or proceeding only with his disparate treatment and hostile work environment claims against the Wellington at Hershey Mills and state law claim against Defendant Guy under the Wiretapping and Electronic Surveillance Control Act ("WESCA"). The motion to appoint counsel will be denied at this time as premature.[1]

---

[1] *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").

## I.    FACTUAL ALLEGATIONS[2]

Thomas names as Defendants (1) the Wellington at Hershey Mills ("the Wellington"); (2) Senior Lifestyle Company, the Wellington's parent company; and the following employees of the Wellington: (3) Amy Sicilia, Human Resources Director; (4) Jackie Johnson, the Executive Director Assistant; (5) Darren Fowlkes, LPN Supervisor; (6) Christopher Poling, Executive Chef; (7) Ebony Nichole Guy, Lead Server; and (8) Anthony Wiggins, Sr., former Dining Director.  (SAC at 1.)  Thomas asserts claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*.[3], alleging discrimination on the basis of "race and appearance," a hostile work environment, retaliation, and infringement on his right to privacy.  (*Id.* at 1-2; ECF No. 6 at 2.)  In support of his claims, Thomas alleges various instances of offensive or racist conduct by his coworkers and supervisors, disparities in his pay and promotion, and ultimately his indefinite suspension from work after reporting the issues to management.  (*See generally* SAC.)

Thomas, who is African-American, began working for the Wellington in July 2023 as a dietary server.  (*Id.* at 1.)  On April 11, 2024, Thomas's supervisor, Defendant Wiggins, told him

---

[2] The following allegations are taken from the Second Amended Complaint (ECF No. 11, "SAC") and an Exhibit (ECF No. 6) filed separately, which contains the charging document Thomas filed with the Equal Employment Opportunity Commission ("EEOC") regarding alleged discrimination at the Wellington at Hershey Mills.  The Court construes the two documents together to comprise the Second Amended Complaint and adopts the sequential pagination supplied by the CM/ECF docketing system.

[3] In the SAC, Thomas asserts claims under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*., while the charge of discrimination he filed with the EEOC asserts claims under Title VII of the Civil Rights Act of 1964.  (SAC at 1; ECF No. 6 at 2).  Section 2000d provides that, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  Because Thomas brings his claims against a private employer, and he makes no allegations regarding an entity receiving federal funding, the Court understands him to assert claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e, *et seq*. rather than Title VI.

to remove his durag head covering "in an unprofessional and aggressive manner" despite white employees being permitted to wear headbands and headscarves that day.  (*Id.* at 2 ¶ 1.)  Thomas asked to complete a work task before complying, but Wiggins refused and later disciplined Thomas for the incident.  (*Id.*)  On April 14, 2024, Thomas was involved in an argument with a white female coworker, was sent home early, and received a written warning, while the white coworker was not subject to disciplinary action.  (*Id.* ¶ 2.)  Thomas says he was "subjected to negative comments regarding his age, maturity, and ability to perform his job" by Defendants and other unspecified employees, who "often question[ed] his intelligence and commitment in ways they did not question white employees."  (*Id.* ¶ 3.)  Thomas asserts he was paid significantly less than "similarly situated white co-workers" who performed the same duties, and that wage increases were similarly inequitable, and when he brought up his concerns with management they were "dismissed or ignored."  (*Id.* at 3 ¶ 4.)  Thomas alleges he "was unlawfully recorded without his consent by Ebony Nichole Guy using Meta Ray-Ban glasses, violating Plaintiff's privacy rights despite his signed waiver prohibiting recordings."  (*Id.* ¶ 6.)  On unspecified dates, Defendants Poling and Guy made comments and threats of physical violence against Thomas.  (*Id.* ¶ 7.)  Thomas reported these incidents, but the Wellington leadership took no action in response.  (*Id.*)

Unspecified co-workers at the Wellington told Thomas that Defendants Sicilia and Johnson had shown them images of monkeys and apes, stating they resembled Thomas, while making racist and other offensive remarks about him.  (*Id.* at 4-5, ¶¶ 11-12.)  On December 19, 2024, Defendant Poling sent Thomas home during a shift without explanation.  (*Id.* at 3 ¶ 5.)  On December 21, 2024, Defendant Fowlkes left Thomas a voicemail instructing him not to report to work until further notice.  (*Id.*)  Thomas has not been called into work since that time.  (*Id.*)

Thomas asserts that on December 29, 2024, he suffered "a medical emergency due to severe stress, anxiety, and depression, from [his work at] the Wellington[,] leading to extreme dehydration and malnutrition and requiring hospitalization at Crozer Hospital." (*Id*. at 4 ¶ 8.)

Thomas filed a charge of discrimination with the EEOC on December 26, 2024, which issued Thomas a Notice of Right to Sue Letter on February 11, 2025. (ECF No. 6.) He seeks compensatory damages, punitive damages, injunctive relief, "front pay or a fair settlement in lieu of reinstatement," and any other relief the Court deems just and proper. (SAC at 5.)

## II.    STANDARD OF REVIEW

Because Thomas appears to be unable to pay the fees to commence this civil action, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, his Second Amended Complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2)(B), which requires the Court to screen and dismiss the SAC if it is frivolous, malicious, fails to state a claim, or seeks relief from an immune defendant. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

4

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). "[T]he plausibility paradigm . . . applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted). To state an employment discrimination claim, as with any other claim, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 213 (quotations omitted).

The Court construes the allegations of a *pro se* complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). Additionally, an unrepresented litigant "cannot flout procedural rules - they must abide by the same rules that apply to all other litigants." *Id.*

III.    DISCUSSION

A.    Title VII

Thomas asserts Title VII claims based on disparate treatment, a hostile work environment, and retaliation.[4]  Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race.  *See E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a)).  Title VII only provides liability for employers, however, thus individual employees such as Amy Sicilia, Jackie Johnson, Darren Fowlkes, Christopher Poling, Ebony Nichole Guy, and Anthony Wiggins, Sr. may not be sued under Title VII, and the claims against them will be dismissed with prejudice.  *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1078 (3d Cir. 1996) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII.").

Thomas identifies the Wellington as his employer in the charge of discrimination filed with the EEOC, thus Thomas may bring Title VII claims against the Wellington.  (ECF No. 6 at 1.)  It is unclear whether Senior Lifestyle Company ("SLC"), the Wellington's parent company, is also Thomas's employer.

> The Third Circuit explains that two entities may be a single employer in the following three situations: (1) if a company splits into smaller entities to evade Title VII's minimum employee requirement; (2) if a parent company directs a subsidiary to perform the alleged discrimination; or (3) if the two companies' "affairs are so interconnected that they collectively caused the alleged discriminatory employment practice."

*Gift v. Travid Sales Assocs., Inc.*, 881 F. Supp. 2d 685, 692–93 (E.D. Pa. 2012) (citation omitted.)  Thomas has not pleaded facts from which the Court can infer that SLC is his employer

---

[4] Thomas references in passing a "failure to promote."  (SAC at 1.)  However, other than mentioning inequitable "wage adjustments" later in the SAC, this allegation is undeveloped and conclusory.

under any of the three theories above.  However, the Court will dismiss SLC without prejudice,

and to the extent Thomas can allege that SLC is his employer he may do so in a third amended

complaint.

        **1.**       **Disparate Treatment Claim**

        For a disparate treatment claim against an employer to be plausible a plaintiff must

"plead[ ] sufficient factual allegations to raise a reasonable expectation that discovery will reveal

evidence of the following elements: (1) that the plaintiff is a member of a protected class, (2) that

the plaintiff was qualified for the position the plaintiff held or sought, (3) that the plaintiff

suffered an adverse employment action, and (4) that the circumstances of the adverse

employment action give rise to an inference of discrimination.  *Johnson v. Keebler-Sunshine*

*Biscuits, Inc*., 214 F. App'x 239, 241 (3d Cir. 2007); *Connors v. Chrysler Fin. Corp*., 160 F.3d

971, 974 (3d Cir.1998).  However, to plead a claim under Title VII, the complaint need not

allege each element of a *prima facie* case as set out by the United States Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *Fowler v. UPMC Shadyside*,

578 F.3d 203, 213 (3d Cir. 2009) ("A determination whether a *prima facie* case has been made,

however, is an evidentiary inquiry – it defines the quantum of proof plaintiff must present to

create a rebuttable presumption of discrimination . . . .  Even post-*Twombly*, it has been noted

that a plaintiff is not required to establish the elements of a prima facie case but instead, need

only put forth allegations that raise a reasonable expectation that discovery will reveal evidence

of the necessary element." (internal citation and quotation marks omitted)).  Rather, a complaint

must allege facts that provide fair notice of a plaintiff's claim and demonstrate a plausible right

to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiffs to allege

facts sufficient to "raise a right to relief above the speculative level").  Accordingly, to state

plausible claims, Thomas must plead sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence that he was treated differently due to his race. Thomas alleges he was subject to employment discrimination based on his "race and appearance" and as a result was paid less than similarly situated co-workers and disciplined for conduct that was tolerated among white employees. (SAC at 1-2.) Accepting all inferences in Thomas's favor, he therefore alleges a plausible disparate treatment claim against the Wellington sufficient to pass statutory screening.

### 2.    Hostile Work Environment

Thomas also asserts he has been subject to a hostile work environment based on the alleged harassment and racist behavior of his co-workers and management's refusal to address the misconduct. (SAC at 3-5.) To plead a plausible hostile work environment claim, a plaintiff must allege: (1) he suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa. 2014). "Under Title VII, a hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (citations and quotation marks omitted.) However, "Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or

generally boorish conduct." *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted).

Thomas's hostile workplace claims arise from several distinct incidents and sources. He alleges that he was subject to violent threats and harassment by two co-workers, Christopher Poling and Ebony Nichole Guy. (SAC at 3.) On an unspecified date, Poling told Thomas, "I will smack the shit out of you," and "I will beat you up outside the workplace." (*Id.*) Guy told Thomas, "I'll get my nephew to come handle you" and "I know where you live, and I will come see you." (*Id.*) While troubling, absent from these alleged statements is any inference that this behavior was based on Thomas's race. Thomas provides no context for these statements, and the reasons for Poling and Guy's animus towards Thomas is not alleged. Thus, he has failed to allege a plausible Title VII hostile workplace claim based on the verbal taunts from Poling and Guy. *See Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006) ("Many may suffer severe or pervasive harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief.")

Thomas's other allegations are more substantial. He alleges that on two occasions in April 2024, he was subject to rules or discipline that were not applied to his white co-workers. On one occasion, he was "written up" for not immediately complying with his supervisor's order that he remove his durag head cover while white co-workers were permitted to wear headbands and headscarves the same day. (SAC at 2, ¶ 1.) On another occasion during the same week, Thomas got into an argument with a white co-worker and he alleged that he was sent home early and later disciplined, while the co-worker was not. (*Id.* at 2 ¶ 2.) Thomas also asserts that on an unspecified date Sicilia and Johnson made "explicit racial remarks" about him to two unnamed coworkers while showing them photos of monkeys and apes. (*Id.* at 4-5.) Thomas asserts that,

after he was effectively suspended from his position at the Wellington, he suffered severe stress, anxiety, and depression, including suicidal ideation, resulting from "workplace mistreatment" at the Wellington.  (*Id.* at 4.)  Thomas thus plausibly alleges that he was subject to pervasive race-based discrimination at the Wellington that detrimentally affected his working conditions and that his employer took no corrective action to address.  Accordingly, the hostile work environment claim will be served on the Wellington for a responsive pleading.

### 3.    Retaliation

Next, Thomas asserts he was subject to retaliation for reporting various problems to his managers at the Wellington, including apparent race-based disparities in pay.  (SAC at 3 ¶ 5.) Title VII prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because he made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes.  *See* 42 U.S.C. § 2000e-3; *Allstate Ins. Co.*, 778 F.3d at 449.  A plaintiff states a retaliation claim if he "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) [he] engaged in conduct protected by [the statute]; (2) the employer took adverse action against [him]; and (3) a causal link exists between [his] protected conduct and the employer's adverse action."  *Connelly*, 809 F.3d at 789; *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).

Thomas fails to satisfy the first element of a retaliation claim.  He alleges "Retaliation for Reporting Discrimination" (SAC at 3 ¶ 5) in conclusory terms only by using those words as an introductory heading to a paragraph that contains no factual allegations about conduct protected by Title VII.  He alleges he was sent home during his shift on December 19, 2024 by Poling, that Fowlkes instructed him on December 21 not to report to work until further instructed by Sicilia

or Johnson, and that he never heard from these managers at the Wellington since. (Am. Compl. at 3 ¶ 5.) Thomas provides no allegations as why he was sent home or told not to come back and specifically fails to allege that the actions were taken because he engaged in conduct protected by Title VII. Because he has failed to allege protected conduct and a causal link between that conduct and the adverse action, his retaliation claim is not plausible and will be dismissed. The Court will, however, permit Thomas an opportunity to amend this claim to attempt to cure this defect.

### B.    Unauthorized Audio and Video Recording

Finally, Thomas alleges that Defendant Guy made an unauthorized audio and video recording of him and his co-workers using her Meta Ray-Ban glasses. Liberally construed, Thomas may be attempting to assert a claim pursuant to Pennsylvania's Wiretapping and Electronic Surveillance Control Act ("WESCA"), which prohibits, *inter alia*, intercepting a private conversation without the other person's consent.[5]

That statute states in relevant part:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication . . .

---

[5] To the extent Thomas offers these factual allegations in support of a Title VII claim, such a claim is not plausible as Guy is an individual employee and thus not a proper Defendant under Title VII. *See Sheridan*, 100 F.3d at 1078. Moreover, Thomas does not allege any facts to suggest that the unauthorized recordings involved discrimination based on his membership in a protected class.

18 Pa. C.S. § 5703.  The statute defines "intercept" as "aural or other acquisition of the contents

of any wire, electronic or oral communication through the use of any electronic, mechanical or

other device."  18 Pa. C.S. § 5702.  It further defines "electronic, mechanical or other device,"

with certain exceptions, as [a]ny device or apparatus . . . that can be used to intercept a wire,

electronic or oral communication."  18 Pa. C.S. § 5702.  The law provides a private cause of

action for an individual whose communication is intercepted.  *See* 18 Pa. C.S. § 5725.

Thomas asserts that he

> was unlawfully recorded without his consent by Ebony Nichole
> Guy using Meta Ray-Ban glasses, violating Plaintiff's privacy
> rights despite his signed waiver prohibiting recordings. This
> recording included both audio and video, capturing private
> conversations and personal details of Plaintiff and other employees
> without their knowledge.

(SAC at 3 ¶ 6.)  Thomas adequately alleges that Guy intercepted his oral communications

without his consent using an electronic device, thus this claim will be served for a responsive

pleading.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Thomas leave to proceed *in forma*

*pauperis* and dismiss the SAC with the exception of Thomas's Title VII disparate treatment and

hostile work environment claims against the Wellington, and the state law WESCA claim against

Guy.  Thomas may opt to proceed only on those claims or file a third amended complaint to

attempt to cure the defects the Court has identified in his other claims that are dismissed without

prejudice.  His Title VII claims against Defendants Amy Sicilia, Jackie Johnson, Darren

Fowlkes, Christopher Poling, Ebony Nichole Guy, and Anthony Wiggins, Sr. will be dismissed

with prejudice because they may not be sued under that statute.  An appropriate order follows,

which contains additional instructions as to amendment.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**